1

2

3

4

5

6

7

8

9

10                 UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

12

13 | DAVID GONZALEZ CAMACHO, *et al.*,  )   Case No. 12-cv-2859-L(BGS)

14            Plaintiffs,            )   **ORDER GRANTING**
                                     )   **DEFENDANTS' MOTION TO**
15 | v.                              )   **DISMISS [DOC. 12]**
                                     )
16 | MAJOR LEAGUE BASEBALL, *et al.*,  )
                                     )
17            Defendants.            )
                                     )
18                                   )
                                     )
19        On November 30, 2012, Plaintiffs David Gonzalez Camacho and Daniel Arrellano

20 Pesqueira commenced this tort action against multiple defendants.[1]  This action arises from

21 allegations that Major League Baseball conspired with the Mexican Major Leagues to prevent

22 baseball prospect Daniel Pesqueira from playing baseball in the United States.  Pending before

23 the Court is the Office of the Commissioner of Baseball (d/b/a Major League Baseball), Major

24 League Baseball Enterprises, Inc., and Major League Baseball Properties, Inc.'s motion to

25

26 ───────────────

27        [1] The defendants in this action are Major League Baseball, Major League Baseball
    Enterprises, Inc., Major League Baseball Properties, Inc., Office of the Commissioner of
    Baseball, National Association of Professional Baseball Leagues, National Association of
28 Professional Baseball Leagues, Inc., and Minor League Baseball.

                                                              12cv2859

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7).[2]  Plaintiffs oppose the motion.

The Court found this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d.1).  (Doc. 19.)  For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

## I.      BACKGROUND[3]

Mr. Gonzalez is a citizen of Mexico, "who is domiciled and does business in the City of Tijuana . . . in the country of Mexico, and who does business and resides in the County of San Diego, California, USA."  (First Am. Compl. ("FAC") ¶ 4.)  He is and was "engaged in the training, support, promotion and representation of young, talented and high caliber Mexican baseball players for eventual placement in international major and minor leagues, including Major and Minor League baseball conducted in the United States[.]"  (*Id.*)  Mr. Pesqueira is a citizen of Mexico who resides in Tijuana, Mexico.  (*Id.*)

On April 1, 2010, Mr. Gonzalez entered into an "Exclusive Agency Contract" with Mr. Pesqueira's parents on behalf of Mr. Pesqueira, who was a minor at the time.  (FAC ¶ 15.)  Under the agency contract, Mr. Pesqueira provided Mr. Gonzalez with, among other things, the "exclusive rights to represent Pesqueira in the negotiation for and contracting of any and all services of Pesqueira as a baseball player for any club in the major and/or minor leagues of any and all countries at any level of play; and Plaintiff Pesqueira agreed that Plaintiff Gonzalez would receive a 30% commission on any and all receipts and entitlements of Pesqueira for his services as a baseball player for a three year term."  (*Id.* ¶ 16.)  Plaintiffs allege that Mr. Pesqueira is "a young, talented, and burgeoning Mexican baseball player who at all times relevant was and is a formidable left handed pitcher."  (*Id.* ¶ 15.)  And pursuant to the terms of

---

[2] The Court will refer to the defendants moving to dismiss collectively as "Defendants" for the purposes of this motion.

[3] In the complaint, David Gonzalez Camacho is referred to as "Gonzalez," and Daniel Arrellano Pesqueira, who is also once mentioned as "Daniel Pesqueira Arellano," is referred to as "Pesqueira."  The Court will follow the same naming convention, and refer to the plaintiffs as Mr. Gonzalez and Mr. Pesqueira.

12cv2859

1    the contract, Mr. Gonzalez began to train and promote Mr. Pesqueira, eventually garnering the

2    interest of talent scouts.  (*Id.* ¶ 15-2.[4])

3    On February 17, 2012, the Boston Red Sox invited Mr. Pesqueira to train with the team

4    for spring training in Fort Meyers, Florida.  (FAC ¶ 15-2.)  Then on March 6, 2012, a scout for

5    the Boston Red Sox notified Mr. Gonzalez that Mr. Pesqueira would be returned to Mexico

6    "based upon the direction of Major League Baseball" because Mr. Pesqueira "belonged to a

7    Mexican league team and could not play in the major leagues without the consent of the

8    Mexican league team."  (*Id.* ¶ 16-2.)  Plaintiffs dispute the validity of this explanation, which

9    they describe as a "completely false" premise.  (*See id.*)  Major League Baseball also advised

10   Mr. Gonzalez that Mr. Pesqueira "was and is on the reserve list of the Association of

11   Professional Baseball Teams of the Mexican Leagues, therefore, he was ineligible to play for the

12   Boston Red Sox."  (*Id.*)

13   At Mr. Gonzalez's request, Major League Baseball forwarded a copy of the "contractual

14   documentation" between Mr. Pesqueira and the Mexican League team called the Diablos Rojos

15   ("Red Devils").  (FAC ¶ 18.)  Plaintiffs describe the documentation as containing "two

16   preprinted, form pages, each prepared in Spanish[,]" without any contractual terms.  (*Id.*)  One

17   page—titled "Contract for Professional Services"—includes Mr. Pesqueira's signature from

18   January 1, 2010 with a start date of March 22, 2009, and a second page with the same title

19   includes Mr. Pesqueira's signature from and with a start date of March 21, 2011.  (*Id.*)  The

20   former purportedly covers the 2009 Mexican baseball season, and the latter covers the 2011

21   season.  Plaintiffs allege that at both times Mr. Pesqueira was under 18 years old, having been

22   born on April 6, 1994.  (*Id.*)  They also note that the earlier contract bears Mr. Pesqueira's father

23   signature, though the later one does not.  (*Id.* ¶ 19.)

24   According to Plaintiffs, Mr. Pesqueira and his father confirmed that they did not sign

25   either of the documents provided by Major League Baseball.  (FAC ¶¶ 19–20.)  They believe

26

27

28   [4] The complaint includes two paragraph 15s and two paragraph 16s.  The Court will refer to the second paragraph 15 as paragraph 15-2, and the second paragraph 16 as 16-2.

12cv2859

that "either or both signatures of Pesqueira on each document has or have been fraudulently lifted from another document and transferred onto these documents, and that these documents are not authentic." (*Id.* ¶ 19.)

Sometime thereafter, Mr. Gonzalez made a legal request to produce "any and all contracts or documents signed by Pesqueira, his parents or legal representatives binding him in any way to the Red Devils, to any other baseball team and/or to the Association of Professional Baseball Teams of the Mexican Leagues." (FAC ¶ 22.) On February 23, 2011, the Association of Professional Baseball Teams of the Mexican Leagues timely complied, and produced a contract similar to the aforementioned ones. (*Id.* ¶ 24.) However, this contract contained a signature of Mr. Pesqueira dated January 1, 2010 with a March 22, 2010 start date, covering the 2010 Mexican baseball season. (*Id.*) Plaintiffs allege that Mr. Pesqueira's signature on this contract is the "exact same signature[]" as contained in the earlier documents meant to cover the 2009 baseball season. (*Id.*) Two other documents were also produced: a document "purported to be a Mexican Federal Institute of Elections ID Card of Alberto Pesqueira Corrales, the biological father of Pesqueira," and a "purported copy of Pesqueira's birth certificate." (*Id.*) Plaintiffs allege that no documentation was produced at the time pertaining to Mr. Pesqueira and the 2011 Mexican baseball season. (*Id.* ¶ 25.)

Plaintiffs continued their investigation. (FAC ¶¶ 26–32.) Either during or after the investigation, Mr. Gonzalez "encouraged and facilitated efforts of Major League Baseball to communicate and work with the Association of Professional Baseball Teams of the Mexican Leagues and the Red Devils of Mexico to verify that in fact Pesqueira was free to train and contract with the Boston Red Sox or any other team." (*Id.* ¶ 32.) Plaintiffs allege that Major League Baseball did indeed communicate with the Mexican League and "confirmed that Pesqueira in fact was not committed to in any way, nor under contract with, the Association of Professional Baseball Teams of the Mexican Leagues and the Red Devils of Mexico." (*Id.*)

Plaintiffs commenced this action on November 30, 2012. They subsequently amended their complaint after it was dismissed without prejudice for lack of subject-matter jurisdiction. In the FAC, they assert the following claims against all of the defendants for: (1) intentional

12cv2859

interference with economic relations; (2) intentional interference with prospective economic advantage; (3) negligent interference with economic relations; (4) negligent interference with prospective economic relations; (5) declaratory relief; (6) negligence; and (7) unfair business practices.  Defendants now move to dismiss under Rule 12(b)(7).  Plaintiffs oppose.

## II.    LEGAL STANDARD

A party may move to dismiss a case for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  Rule 19 imposes a three-step inquiry: (1) Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?; (2) If so, is it feasible to order that absent party to be joined?; and (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?  *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).  The terms "necessary" and "feasible" are "terms of art in Rule 19 jurisprudence": "Necessary" refers to a party who should be joined if feasible; and "indispensable" refers to "a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed."  *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 867 n.5 (9th Cir. 2004).  The failure to join a party under Rule 19 can only lead to dismissal of a suit where the court cannot obtain jurisdiction over the necessary party and that party is determined to be indispensable to the action.  *See* Fed. R .Civ. P. 19(a).

"The Ninth Circuit has held that a court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable."  *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001).  "A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion."  *Id*.  "A Rule 12(b)(7) motion for failure to join an indispensable party demands a fact specific and practical inquiry."  *Id*.; *see Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  "To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings."  *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

12cv2859

1    **III.    DISCUSSION[5]**

2            Defendants argue that both the Red Devils and the Mexican League are necessary parties

3    that cannot be feasibly joined to this action because (1) a determination of the validity of Mr.

4    Pesqueira's alleged contracts with the Red Devils is necessary, and (2) joining the parties would

5    vitiate this Court's subject-matter jurisdiction and Plaintiffs cannot establish personal

6    jurisdiction over these absent parties in this Court.  Plaintiffs present their claims very differently

7    in their opposition brief compared to the allegations in the complaint.  In a disingenuous early-

8    inning strategic shift, they direct the focus of this action on Mr. Gonzalez's agency contract with

9    Mr. Pesqueira, arguing that the Red Devils and Mexican League are "joint tortfeasors" that are

10   not necessary parties to litigate the claims asserted in this action.  (*See* Pls.' Opp'n 8:14–16:24.)

11   Plaintiffs swing for the fences, but ultimately come up short.

12           Upon reviewing the allegations in the complaint, it is clear that the threshold issue in this

13   action is the validity of the alleged contracts entered into between Mr. Pesqueira and the Red

14   Devils.  Plaintiffs proceed with their action under the presumption that those contracts are

15   invalid—because Mr. Pesqueira was a minor at the time the contracts were executed, or because

16   the signatures were "fraudulently lifted from another document and transferred onto these

17   documents."  (*See* FAC ¶¶ 18–20, 24.)  These allegations in the complaint overwhelmingly

18   demonstrate that this entire action hinges on one game-winning issue—the validity of the Red

19   Devils contracts.  The Court emphasizes that determining the validity of the alleged contracts

20   between Mr. Pesqueira and the Red Devils is outside the scope of this series.  Therefore, the

21   Court rejects the disingenuous shifted premise that Plaintiffs present in their opposition brief,

22   and shall proceed analyzing Defendants' motion while recognizing that the validity of the

23   alleged contracts entered into between Mr. Pesqueira and the Red Devils is the go-ahead run.

24   //

25   //

26

27           [5] Plaintiffs object to *every* exhibit that Defendants provide.  (Docs. 22-1, 26.)  Most of the
     Court's analysis relies on the allegations in the complaint, but insofar as the Court's reliance on
28   any of the evidence that Defendants present, the Court **OVERRULES** Plaintiffs' objections.

6

A.    **The Red Devils and the Mexican League Are Necessary Parties.**

A party is necessary if: (1) complete relief cannot be granted in the party's absence; or (2) the district court determines that "the absent party's participation is necessary to protect its legally cognizable interests or to protect other parties from a substantial risk of incurring multiple or inconsistent obligations because of those interests." *Disabled Rights Action Comm.*, 375 F.3d at 878 (quoting Fed. R. Civ. P. 19(a)). Such a legally cognizable interest must be more than a financial stake in the outcome of the litigation. *Makah Indian Tribe*, 910 F.2d at 558. Defendants demonstrate that the Red Devils and the Mexican League are necessary parties under the latter of the two aforementioned definitions. *See Disabled Rights Action Comm.*, 375 F.3d at 878.

Under Rule 19(a)(1)(B)(i), an absent party is necessary if it "has a *legally protected interest* in the suit" and "that interest will be *impaired or impeded* by the suit." *Makah Indian Tribe*, 910 F.2d at 558 (emphasis in original). "Impairment may be minimized if the absent party is adequately represented in the suit." *Id.* It is also a "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002).

Plaintiffs unequivocally seek a judicial determination of their rights and duties under the alleged contracts between Mr. Pesqueira and the Red Devils. (*See* FAC ¶ 67–69.) In the complaint, Plaintiffs explicitly state that they desire "a declaration as to whether or not Pesqueira is bound to the Red Devils of Mexico." (*Id.* ¶ 68.) They even go as far as to state that a "judicial declaration is *necessary* and appropriate at this time under the circumstances" because without the declaration, they are "financially burdened by the wrongful position taken by defendants Major League Baseball, and unable to work in their chosen professions." (*Id.* ¶ 69 (emphasis added).) In other words, determining the validity of the Red Devils contracts is necessary to resolve essentially all of the wrongful conduct alleged in this action. The same applies to the Mexican League because of its bylaws and regulations that require disputes between players and member teams to be resolved by binding arbitration before the Executive President of the

12cv2859

1   Mexican League.  (*See* Defs.' Ex. E-1; S. Gonzalez Decl. ¶ 4.)

2       Neither the Red Devils nor the Mexican League are represented in this action, and a

3   determination by this Court regarding the validity of the Red Devils contracts may impair and

4   impede the Red Devils' and the Mexican League's legally protected interest in this suit.  *See*

5   *Makah Indian Tribe*, 910 F.2d at 558.  Keeping with the baseball theme, a batter cannot record a

6   base hit or a home run against an absent pitcher; that pitcher needs to be in the game before that

7   happens.  *See id.*  In this circumstance, the absent pitchers are the Red Devils and the Mexican

8   League.  *See id.*  Therefore, as a party to the Red Devils contracts, the Red Devils, and by

9   extension the Mexican League, are necessary parties.  *See Dawavendewa*, 276 F.3d at 1157.

10      Alternatively, under Rule 19(a)(1)(B)(ii), an absent party is also necessary if there is a

11  potential risk that adjudicating an action without the absent party could leave an existing party

12  open to "incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P.

13  19(a)(1)(B)(ii).  The Ninth Circuit has stated that

14          "[i]nconsistent obligations" are not . . . the same as inconsistent
            adjudications or results.  Inconsistent obligations occur when a party is
15          unable to comply with one court's order without breaching another
            court's order concerning the same incident.  Inconsistent adjudications
16          or results, by contrast, occur when a defendant successfully defends a
            claim in one forum, yet loses on another claim arising from the same
17          incident in another forum.

18  *Cahill Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976

19  (9th Cir. 2008) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

20      Defendants argue that "the Red Devils could still sue others in the Mexican courts and

21  elsewhere for wrongfully interfering with its contract with Mr. Pesqueira[,]" and "[t]his action

22  will not have any binding effect on the Red Devils unless the team is made a party to this case."

23  (Defs.' Mot. 11:10–19.)  The concern that Defendants suggest is important, but for the purposes

24  of Rule 19, the paramount concern is a Mexican court or another in the United States

25  determining that the Red Devils contracts are valid if this Court finds that they are not, or vice

26  versa.  That would produce inconsistent obligations for all of the parties in this action in addition

27  to the Red Devils because operating under one court's determination would then necessarily

28  cause the parties to breach another court's determination regarding the same issue, i.e., the

12cv2859

validity of the Red Devils contracts.  *See Cahill Dehe Band of Wintun Indians*, 547 F.3d at 976.
Therefore, because of the risk of inconsistent obligations, the Red Devils are a necessary party to
this action.  *See id.*

Swing and a miss—strike one.


**B.    Joining the Red Devils and the Mexican League Is Not Feasible.**

"If an absentee is a necessary party under Rule 19(a), the second stage is for the court to
determine whether it is feasible to order that the absentee be joined."  *Equal Emp't Opportunity
Comm'n v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  Rule 19(a) sets forth three
circumstances in which joinder is not feasible: (1) when venue is improper; (2) when the
absentee is not subject to personal jurisdiction; and (3) when joinder would destroy subject
matter jurisdiction.  *See id.* (citing Fed. R. Civ. P. 19(a); *Tick v. Cohen,* 787 F.2d 1490, 1493
(11th Cir. 1986)).

Defendants argue that "[t]he Red Devils and the Mexican League cannot be joined both
because their joinder would destroy this Court's subject-matter jurisdiction, and because
Plaintiffs cannot establish personal jurisdiction over them in this Court."  (Defs.' Mot.
11:20–13:27.)  Plaintiffs do not address feasibility in their opposition brief.  In fact, the words
"feasible" and "feasibility" do not appear anywhere in their brief.  Consequently, Plaintiffs
concede that joining the Red Devils and the Mexican League is not feasible under the second
and third circumstances that Rule 19 enumerates.  *See* Civ. L.R. 7.1(f.3.c).  They took this pitch
and it went right down the middle—strike two.


**C.    The Red Devils and Mexican League Are Indispensable Parties.**

If the necessary party cannot be joined, the court must then determine whether the party is
indispensable.  *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996).  Under Rule 19(b),
indispensable parties are "persons who not only have an interest in the controversy, but an
interest of such a nature that a final decree cannot be made without either affecting that interest,
or leaving the controversy in such a condition that its final termination may be wholly

12cv2859

inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1854). Rule 19(b) provides the factors that courts should consider in determining if an action should be dismissed because an absent party is indispensable: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. Fed. R. Civ. P. 19(b); *see also Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). Furthermore, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).

Plaintiffs' primary arguments addressing indispensability are: (1) Defendants fail to meet their burden, in part, because all of the cases cited are distinguishable, and (2) in equity and good conscience, this case should be allowed to proceed regardless of whether the Red Devils and the Mexican League are indispensable. (Pls.' Mot. 16:24–22:12.) The Court rejects these arguments. Plaintiffs either misread or misunderstand the cited case law, and they also fail to provide any law themselves that provides an avenue for this Court to bypass Rules 12(b)(7) and 19 and all of the related case law as they implore the Court do.

Rather, in seeking a determination that the Red Devils contracts are invalid, Plaintiffs are, for all practical purposes, attempting to set aside a contract. And it is evident from the allegations in the complaint that the Red Devils, as a party to the alleged contracts, and by extension the Mexican League, are parties that will be affected by any determination regarding the validity of the contracts. If Plaintiffs want to record an earned run against the absent pitchers, Plaintiffs need to face them. Thus, under *Lomayaktewa*, the Red Devils and the Mexican League are indispensable parties to this action. *See Lomayaktewa*, 520 F.2d at 1325. Consequently, all four of the Rule 19(b) factors weigh in favor of dismissal. *See* Fed. R. Civ. P. 19(b). And finally, strike three—out.

//

//

12cv2859

**IV.     CONCLUSION & ORDER**

     In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss under Rule 12(b)(7) and **DISMISSES** this action in its entirety.  (Doc. 12.)

     **IT IS SO ORDERED.**

DATED: December 19, 2013

_____
M. James Lorenz
United States District Court Judge

11

12cv2859